Brian P. Shire, Esq.
SUSANIN, WIDMAN & BRENNAN, P.C.
1001 Old Cassatt Road, Suite 306
Berwyn, PA 19312
(610) 710-4510
(610) 710-4520 (f)
bshire@swbcounsellors.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ | : | |
| VWR INTERNATIONAL, LLC | : | |
| 2039 Center Square Road | : | |
| Bridgeport, New Jersey 08014 | : | |
| | : | CIVIL ACTION NO.: |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| INTERNATIONAL BROTHERHOOD | : | |
| OF TEAMSTERS, LOCAL 676 | : | |
| 101 West Crescent Boulevard | : | VERIFIED COMPLAINT TO |
| Collingswood, New Jersey 08108 | : | VACATE ARBITRATION AWARD |
| | : | |
| Defendant. | : | |
| _____ | : | |

Plaintiff VWR International, LLC ("VWR") files this Verified Complaint against

defendant International Brotherhood of Teamsters Local 676 (the "Union") to vacate the decision

of an arbitrator, stating as follows:

### **PARTIES**

1.      VWR is a Delaware limited liability company engaged in the distribution of

research laboratory products with its principal place of business located in Radnor, Pennsylvania.

2.      VWR is an "employer" in "an industry affecting commerce" as defined in 29 U.S.C.

§152(2) and (7), and 29 U.S.C. §185(a).

3.      VWR maintains a warehouse distribution facility located at 2039 Center Square Road, Bridgeport, New Jersey 08014 (the "Bridgeport Facility").

4.      Upon information and belief, the Union is an unincorporated association and maintains its principal place of business at 101 West Crescent Boulevard, Collingswood, New Jersey 08108.

5.      The Union is a "labor organization" within the meaning of 29 U.S.C. §152(5), representing employees in an industry affecting commerce within the meaning of 29 U.S.C. §185(a).

6.      Pursuant to the National Labor Relations Board's certification in case 04-RC-13038, the Union is the sole and exclusive bargaining agent for all warehouse persons and truck drivers employed by VWR at the Bridgeport Facility (the "Bargaining Unit").

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 by virtue of Section 301 of the Labor Management Relations Act, 29 U.SC. §185.

8.      Venue is proper in this judicial district pursuant 29 U.S.C. §185(a) and 28 U.S.C. §1391(b)(1) because the Union resides, exists, and operates in the State of New Jersey in which this district is located, and pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the events giving rise to this case occurred in this district.

## FACTUAL BACKGROUND

9.      VWR and the Union were parties to a collective bargaining agreement ("CBA") covering the terms and conditions of employment for employees in the Bargaining Unit, effective from May 1, 2021 through April 30, 2022.

10.     The grievant, Faith Sharper ("Grievant"), was employed by VWR as a material handler pursuant to the terms and conditions of the CBA.

11.     Grievant suffered a work-related shoulder injury on January 26, 2021 while attempting to remove an approximately 35-40 pound box from a shoulder height shelf.

12.     VWR placed Grievant on a medical leave of absence on or about March 30, 2021.

13.     On November 23, 2021, Grievant's treating physician, Doctor Richard DiVerniero, issued Grievant a one-page document labeled "Patient Instructions" that provided in pertinent part: "*I have cleared her to return to full unrestricted duty based on the functional capacity evaluation. Continuation of a dedicated home exercise program as recommended. She will be considered at maximum medical improvement and officially discharged from care*."

14.     Upon receiving a copy of the "Patient Instructions" dated November 23, 2021, VWR asked Grievant's workers compensation case manager whether Dr. DiVerniero had a copy of VWR's material handler job description at the time he cleared the Grievant to "return to full unrestricted duty based on the functional capacity evaluation."

15.     After informing VWR that she did not know if Dr. DiVerniero had received a copy of the material handler job description, the case manager personally visited Dr. DiVerniero's office on December 8, 2021 and handed him a copy of the material handler job description.

16.     Dr. DiVerniero took the copy of the job description and retreated to his office for approximately twenty (20) minutes, whereafter Dr. DiVerniero's assistant appeared and handed the case manager a "progress note" dated November 23, 2021.

17.     The last page of the progress note contained the following notation: "***Addendum: 12/08/2021 02:19 PM DiVerniero, Richard C > I received information that the patient is required to lift/carry, push or pull up to 75 pounds as noted in her job description. Based on the functional***

*capacity evaluation she is cleared for lifting up to 50 pounds. Therefore, she will be placed on permanent modified duty, which allows lifting to up to 50 pounds only as outlined in the FCE.*"

18.     After VWR received the progress note with updated addendum, VWR called Grievant on December 10, 2021 and told her that it understood Dr. DiVerniero placed her on a permanent 50-pound lifting restriction based on the results of the functional capacity evaluation and, because VWR's material handler position required employees to be able to lift up to 75 pounds and she could not perform the minimum requirements of the material handler position, VWR could not return her to work as a material handler.

19.     Article 21 of the CBA contains a detailed grievance and arbitration procedure. A true and correct copy of Article 21 of the CBA is attached hereto as **Exhibit A**.

20.     Article 21, Section 3 of the CBA provides: "All formal grievances, must be filed in writing to the Company within five (5) working days of the event(s) giving rise to the grievance. Unless so filed within the prescribed time limits the grievance shall be considered waived. The parties shall have five (5) working days following the receipt of a formal grievance to reach a settlement."  See **Exhibit A**.

21.     Article 21, Section 4 of the CBA provides: "If the parties are unable to reach a settlement of a formal grievance in accordance with Section 3 above, the complaining party must notify the other party in writing within 10 working days of its official demand to submit the particular grievance to arbitration. Only the Union or the Company may submit a grievance to arbitration. If the written notification is not received by either party, the right to arbitrate the particular grievance will be waived." See **Exhibit A**.

22.     Article 21, Section 5 of the CBA provides in pertinent part: "The arbitrator shall have no power to alter, amend, change, add to, or subtract from any of the terms of this Agreement,

but shall determine only whether or not there has been a violation of this Agreement in the respect alleged in the grievance." See **Exhibit A**.

23.    Article 21, Section 6 of the CBA provides: "When calculating time limits, working days shall not include Saturdays, Sundays, or Company-recognized holidays. The time limits shall start immediately upon the expiration of time for the last answer to a section. Time limits in this Article may only be extended by mutual agreement of the parties in writing." See **Exhibit A**.

24.    The Union filed a grievance on December 17, 2021 alleging that VWR's failure to return the Grievant back to work constituted an unjust termination. A true and correct copy of the Grievance is attached hereto as **Exhibit B**.

25.    VWR formally denied the grievance on December 21, 2021. A true and correct copy of the Grievance Denial is attached hereto as **Exhibit C**.

26.    The Union did not submit its written demand for arbitration to VWR until January 12, 2022. A true and correct copy of the Union's Demand for Arbitration is attached hereto as **Exhibit D**.

27.    The Union's written demand for arbitration was untimely under the terms and conditions of Article 21 of the CBA, which resulted in the Union waiving its right to arbitrate the grievance.

28.    The parties did not agree in writing to extend the time limits set forth in Article 21 of the CBA.

29.    VWR notified the Union of its procedural arbitrability defense before the parties struck names from the arbitrator panel selection list; however, the Union wanted to proceed with arbitration and respond to the procedural arbitrability defense in due course.

30.    The parties mutually selected A. Martin Herring as the appointed arbitrator.

31.     A virtual arbitration hearing was conducted on July 21, 2022.

32.     During the arbitration hearing, VWR submitted facts and argument that the Union had waived its contractual right to arbitrate the grievance due to its failure to timely submit a written demand for arbitration.

33.     VWR submitted a post-hearing brief setting forth facts and argument that the Union had waived its contractual right to arbitrate the grievance due to its failure to timely submit a written demand for arbitration.

34.     On November 4, 2022, the Arbitrator issue an opinion and award upholding the grievance. A true and correct copy of the Arbitration Award is attached hereto as **Exhibit E**.

35.     The Arbitration Award states in relevant part:

> I agree with the Union's position that the parties by their activities agreed to an extension, and waived all time limits, as to when the Union was required to demand arbitration. I credit the evidence and arguments presented by the Union that the Union and the Company had agreed by their actions after the grievance was filed, had waived the requirements of the second notification for arbitration by reason of the fact that the parties had not yet shared all information from Dr. DiVerniero and that the parties were further communicating with each other in an attempt to resolve the underlying grievance. … In addition, I agree with the Union's argument that it is the duty of an arbitrator providing services to the parties by doing equity for the benefit of the parties. So I am not inclined to dismiss a grievance for a six day time period. Especially when no harm or prejudice is shown. This at worst is a mistake by a Union representative thinking he is acting in concert with the Company to resolve this matter.

See **Exhibit E**.

## COUNT I
### Violation of Section 301 of the Labor Management Relations Act

36.     The averments in paragraphs 1 through 35 of the Verified Complaint are hereby incorporated by reference as if restated herein in their entirety.

37.     Section 301 of the Labor Management Relations Act permits a court to vacate an arbitration award where the arbitrator's decision does not draw its essence from the language of the agreement and where the arbitrator exceeds his/her authority in issuing the award.

38.     Article 21 of the CBA sets forth the parties' agreed upon grievance and arbitration procedure.

39.     The Union failed to notify VWR in writing of its official demand to submit the grievance to arbitration in accordance with the strict time deadlines set forth in the CBA, thereby waiving its right to arbitrate the underlying grievance.

40.     The parties did not agree in writing to extend the time limits set forth in the CBA's grievance and arbitration procedure.

41.     Article 21, Section 5 of the CBA provides that the "arbitrator shall have no power to alter, amend, change, add to, or subtract from any of the terms of this Agreement…". See **Exhibit A**.

42.     The Arbitration Award concluded that the Union preserved its right to arbitrate the grievance based on the parties' "actions." See **Exhibit E**.

43.     The Arbitration Award further concluded it would be inequitable to dismiss a grievance where the Union's written demand for arbitration was submitted six (6) days after the strict time deadline had expired.  See **Exhibit E**.

44.     There is no language in the CBA supporting the Arbitration Award.

45.     The Arbitration Award impermissibly deletes the strict time deadlines contained in Article 21, Section 3 of the CBA, as well as language requiring that these deadlines "may only be extended by mutual agreement of the parties in writing."

46.     The Arbitration Award impermissibly deletes the provision in Article 21, Section 4 of the CBA that provides "the right to arbitrate the particular grievance will be waived" when a party fails to submit a written demand for arbitration within the strict time deadlines contained in the CBA.

47.     The Arbitration Award must be vacated because the Arbitrator exceeded his authority under the CBA.

48.     The Arbitration Award must be vacated because it does not draw its essence from the language of the CBA.

WHEREFORE, Plaintiff VWR International, LLC respectfully requests that this honorable Court enter judgment in its favor and against the International Brotherhood of Teamsters Local 676, vacating the Arbitration Award issued by A. Martin Herring on November 4, 2022 in its entirety, and granting Plaintiff such other declaratory, equitable, or legal relief as this Court may deem just and proper.

Respectfully submitted,

**SUSANIN, WIDMAN & BRENNAN, P.C.**

Date: November 22, 2022            By: _____

Brian P. Shire, Esq.
1001 Old Cassatt Road, Suite 306
Berwyn, PA 19312
(610) 710-4510
(610) 710-4520 (f)
bshire@swbcounsellors.com

*Attorneys for Plaintiff*

## VERIFICATION

I, **Kimberly Vega-Medina,** of full age, say that I am the Sr. Human Resource Generalist at VWR International, LLC, that I am authorized to make this Verification on its behalf, and that I have personal knowledge of the facts set forth in the Verified Complaint. I verify that, to the best of my information, knowledge and belief, the facts set forth in the Verified Complaint are true. Pursuant to Rule 1:4-4(b), I certify that the foregoing statements made by me are true and I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: 11/22/2022

_____
Kimberly Vega-Medina